UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

IN RE: REGAN GULLATT
JO LINDA GULLATT

CASE NO. 17-BK-30191

## OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

NOTICE is hereby given that First Tower Loan, LLC, f/k/a First Tower Loan, Inc., d/b/a Tower Loan of Ruston ("Creditor") hereby files an Objection to the Debtor's Chapter 13 Plan (hereinafter "Debtor" whether one or more). Creditor objects to the Plan for the following reasons:

1.

A. The Debtor provides in the plan that Creditor is partially secured, and plans to pay only a portion of the entire debt.

B. Creditor has three secured debts. The documents evidencing the debt and security are attached hereto.

2.

The rebated balance owed to Creditor as of the date of filing was $1,505.52 as to loan no. 1, $414.38 as to loan no. 2 and $4,354.59 as to loan no. 3, and the interest rate should be reasonable.

3.

Creditor should be paid concurrently with any administrative fees in order to not diminish its collateral value.

4.

Loan no. 2 is a purchase money security interest loan.

5.

Debtor incurred loan no. 2 on April 1, 2016.

6.

Debtor filed the present bankruptcy petition on February 6, 2017.

7.

Debtor filed the present bankruptcy petition within one year from the date of loan no. 2 with Creditor.

8.

Based on the preceding and subject to 11 U.S.C. § 1325 (a)(9), loan no. 2 is not covered by 11 U.S.C. 506 and as such, debtor should be required to pay the entire balance due Creditor as of the date of filing on that loan.

9.

If Creditor is determined to have an oversecured claim, Creditor prays that Debtor pay reasonable attorney's fees incurred in connection with filing this proceeding, pursuant to 11 U.S.C. 506(b).

10.

As to loan no. 1 and loan no. 3, the Debtor must recognize Creditor's security and plan to pay 100% of the value of the collateral over a reasonable period of time at the *In Re: Till* interest rate. At the time of loan no. 3 the debtor valued the collateral securing the loan at $5,700.00.

11.

Creditor objects to any claimed exemption as to the collateral listed on the attached security agreement.

12.

Creditor reserves the right to introduce evidence at the confirmation hearing concerning Debtor's compliance with 11 U.S.C. § 1322 (a)(1) and/or 11 U.S.C. § 1325 (b)(1(B).

13.

In the event it is determined that Debtor is not paying all disposable income into the plan, Debtor shall be required to revise its budget and schedules accordingly.

14.

Debtor misrepresented its financial status to Creditor causing Creditor to rely on the information given in creating loan no. 3. Debtor filed for relief under the Chapter 13 Bankruptcy code only 62 days after receiving the loan; therefore, Debtor knew that it was insolvent when the loan was made. The Debtor never intended to repay this loan to Creditor. The debt should be determined to be non-dischargeable or the case should be dismissed. This case was filed in bad faith.

15.

Creditor prays that the confirmation will be denied.

Shreveport, Louisiana, this ___ day of April, 2017.

/s/ Kevin J. Payne

| | |
|---|---|
| FRED A. ROGERS, III | BAR # 2080 |
| E. KEITH CARTER | BAR #16847 |
| KEVIN J. PAYNE | BAR #28717 |
| SANDY E. CLAUSE | BAR #28535 |
| BRIAN T. LANGFORD | BAR #33933 |
| JORDAN B. BIRD | BAR #32344 |
| GRAY H. MCCRAW III | BAR #33972 |

ROGERS, CARTER, & PAYNE, LLC
4415 Thornhill Avenue
Post Office Box 7235
Shreveport, Louisiana 71137
(318) 861-1111

ATTORNEYS FOR CREDITOR

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

IN RE: REGAN GULLATT
JO LINDA GULLATT

CASE NO. 17-BK-30191

<u>CERTIFICATE OF SERVICE</u>

I, Kayla B. Woodall, Paralegal for Rogers, Carter & Payne, LLC, do hereby certify that a copy of the foregoing Notice of Objection to Confirmation of Chapter 13 Plan filed in connection with this matter has been mailed by United States Mail, postage prepaid, via e-mail or hand-delivered to the following persons:

>Regan and Jo Gullatt
>4116 Highway 145
>Choudrant, LA 71227
>
>James W. Spivey II
>Attorney at Law
>1515 North 7th Street
>West Monroe, LA 71291
>
>E. Eugene Hastings
>Chapter 13 Trustee
>P.O. Box 14839
>Monroe, LA 71207
>
>U. S. Bankruptcy Trustee
>300 Fannin Street
>Suite 3196
>Shreveport, LA 71101

This Certificate dated this _6_ day of April, 2017 in Shreveport, Louisiana.

/s/ Kayla B. Woodall
_____
KAYLA B. WOODALL
Paralegal for Rogers, Carter, & Payne, LLC

# RETAIL INSTALLMENT CONTRACT SECURITY AGREEMENT AND DISCLOSURE AGREEMENT

Date of Contract: ~~1/2/2016~~ 1-11-2016 RG

## BUYER

| LAST NAME | FIRST | INITIAL | ACCOUNT NUMBER |
|---|---|---|---|
| GULLATT | REGAN | B | |
| LAST NAME | FIRST | INITIAL | |

STREET ADDRESS: 4116 HWY 145
CITY: CHOUDRANT  STATE: LA  ZIP: 71227

## SELLER

| NAME | SALESMAN |
|---|---|
| IVAN SMITH (31836123 | |

STREET ADDRESS: 3591 PECAN LAND MALL DR
CITY: MONROE  STATE: LA  ZIP: 71203

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 0.00 |
|---|---|---|---|---|
| 23.99 % | $ 749.37 | $ 1,817.43 | $ 2,566.80 | $ 2,566.80 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 36 | 71.30 | Monthly Beginning 02/01/2016 |

Security: You are giving a security interest in the goods or property being purchased.
Prepayment: If you pay off early, you may be entitled to a refund of part of the finance charge.
Late Charge: If a payment is more than 10 days late, you will be charged 5% of the payment amount or $10.00, whichever is greater.

RG 2-11-2016

See your contract documents for any additional information about nonpayment, default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties.

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including sales tax) ... $ 1,817.43
2. Cash Downpayment $ 0.00
   Total Downpayment $ 0.00
3. Amount Paid to Others on Your Behalf
   a. To Your Prior Account No. N/A $ 0.00
   b. N/A $ 0.00
   Total Paid to Others on Your Behalf $ 0.00
4. Unpaid Balance (1-2+3) $ 1,817.43
5. Amount Financed (4) $ 1,817.43

## DESCRIPTION OF GOODS OR SERVICES (collectively, the "GOODS")

LIVING ROOM
SEE ATTACHED INVOICE

## INSTALLMENT SALES CONTRACT AND SECURITY AGREEMENT

PARTIES: "Buyer" means all Buyers signing this contract whether one or more; "Seller" means the Seller signing this contract and any successors and assigns thereof, including without limitation any creditor that purchases this contract.
NOTE: For value received, pursuant to the terms and conditions hereof (including those on the additional pages of this contract), Buyer purchases the Goods described above and agrees to pay to the order of Seller or Seller's assignee, at the office of the holder of this contract, the Total of Payments according to the schedule of payments set out above. If there is more than one Buyer, then each agrees that they are jointly and severally liable for payment of the Goods described above.
DEFAULT: Buyer shall be in default hereunder when: (i) Buyer defaults in payment or performance of any obligation or covenant herein; or (ii) upon loss, theft, substantial damage or destruction of the Goods; or (iii) when Seller reasonably deems itself insecure.
REMEDIES: Upon default, and if required, at any time thereafter, Seller may (i) declare the entire unpaid balance immediately due and payable, at the option of the holder hereof, without notice or demand; and (ii) cause all or any part of the Goods to be seized and sold under nonjudicial foreclosure or sale, or executory or other legal process issued by any court of competent jurisdiction, with or without appraisement, at the option of the holder, to the highest bidder for cash. Buyer shall pay all costs of collection, including court costs and reasonable attorney's fees.
For purposes of foreclosure by executory process, Buyer hereby confesses judgment in favor of the holder for the full amount of the indebtedness, together with all attorney's fees and costs, and any and all monies that may become due to the holder under the terms hereof or secured hereby. Buyer further waives the benefit of appraisement provided for in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, to the extent applicable, and all other laws conferring the same; the demand and three (3) days notice of demand as provided in Articles 2639 and 2721 of the Louisiana Code of Civil Procedure, the notice of seizure provided by Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; and the three (3) days delay provided for in Articles 2331 and 2722 of the Louisiana Code of Civil Procedure.
LATE CHARGE: Buyer shall pay Seller a late charge, the greater of $10.00 or 5% of the unpaid payment with respect to any payment that continues unpaid for more than ten (10) days following its scheduled date or deferral date.

TITLE: Title to said Goods shall not pass to Buyer until the balance is fully paid. In consideration of $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, the undersigned (whether one or more) has granted, and by these presents does hereby grant unto Seller a purchase money security interest pursuant to Section 9-309(1) of the Revised Article 9 of the Uniform Commercial Code, in the Goods and any and all additions and accessories thereto and proceeds and products thereof to secure the payment in performance of Buyer's obligations hereunder.
CREDITORS: If Tower Loan of Mississippi LLC, First Tower Loan LLC, or Gulfco of Louisiana LLC, ("Tower"), P.O. Box 320001, Flowood, MS 39232, buys this contract then all disclosures are made jointly by Seller and Tower.
**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**
REFUND FOR REPAYMENT IN FULL: If Buyer pays in full (by cash, renewal or other wise) before the last payment is due, Seller shall pay Buyer a refund of unearned finance charges, excluding the origination and documentation fees, as follows: (i) if paid before the expiration of one-half (1/2) of the term of the loan, the refund shall be computed on the Rule of 78s after first deducting a prepayment charge of $25.00, or (ii) if paid after the expiration of one-half (1/2) of the term of the loan, the refund shall be computed according to the Rule of 78s.
CREDIT REPORTING: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You agree and hereby authorize us to obtain credit reports on you, both now, and at any time any portion of the debt remains owed to us. You specifically acknowledge and agree that we may disclose any default by you under this Note, along with any other relevant information, to credit reporting bureaus.

FINANCE CHARGE REFUND OPTION (Dealer checks one if applicable) [ ] 90 days [ ] 180 days [ ] 365 days [✓] 730 days.
If one of the boxes above are checked, then the following additional terms apply: If Buyer pays the entire Amount Financed set forth above and any late fees within the number of days shown in the box checked above (the "Option Period") Seller shall refund to Buyer all finance charges paid by Buyer. During the Option Period, Buyer must timely make all scheduled payments, and failure to do so is a default under this contract. In addition to all other remedies available to Seller upon Buyer's default, if, during the Option Period, Buyer fails to make any scheduled payment within thirty (30) days after its scheduled due date, the finance charge refund option shall automatically terminate, and Seller shall have no obligation to refund any finance charges to Buyer under such option. The Option Period starts on the date the contract is signed.

THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS FOR WHICH YOU ARE RESPONSIBLE.

LA RISC 01/15  PAGE 1 OF 3 PAGES

Buyer shall keep the Goods free from any adverse lien, security interest, or encumbrances and in good order and repair. Buyer shall not use the Goods in violation of any law, and Buyer shall not sell or transfer the Goods without the written consent of Seller.

Said Goods will be located and situated at the residence of Buyer(s) as shown above, unless otherwise state herein _____ _____ _____ and shall not be removed from the premises, nor in any way disposed of without the written consent of the Seller. The undersigned further covenant and agree to keep the Goods fully insured against loss by fire, theft and collision or other casualty (as applicable) loss, if any, payable to Seller as his interest may appear. Buyer shall pay promptly when due all taxes and assessments upon the Goods. Seller may inspect the Goods at any time, wherever located.

At its option, Seller may discharge taxes, liens, security interest, and other encumbrances on the Goods, may pay for the insurance coverage on the Goods and may pay for the maintenance and preservation of the Goods. Buyer shall reimburse Seller on demand for any such payments made by Seller, and Seller shall be entitled to interest on such payments at 12% per annum.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. This arbitration agreement limits your rights to use the Courts.**

By making this loan, Lender binds itself to this arbitration agreement.

The Buyer, Seller and any successors or assignees, hereinafter referred to as "The Parties".

**Arbitration** is a method of resolving disputes between parties without going to court. The Parties agree that if there are any disputes between them, those disputes will be resolved by arbitration. Any party may require the dispute or claim to be submitted to an arbitrator in accordance with this provision. The arbitrator's decision will be final and binding on all parties. The parties agree that the funds loaned to Buyer were transactions in interstate commerce, that this loan involves interstate commerce, and that the Federal Arbitration Act applies to this transaction. The Parties understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

The Parties agree that they shall arbitrate all disputes between them on the following terms:
(1) Except as otherwise set forth below, this arbitration agreement applies to all claims and disputes between The Parties. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or to the arbitrability of any claim or counterclaim. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:
   • The consumer credit contract Buyer is obtaining from Seller today and any other retail installment contracts with Seller;
   • Any insurance purchased in connection with this consumer credit contract or any previous retail installment sales contract;
   • Any other product or service purchased in connection with this consumer credit contract;
   • Whether the claim or dispute must be arbitrated;
   • The validity of this arbitration agreement;
   • Any negotiations or discussions between us;
   • All claims or disputes based upon Federal or State laws or regulations;
   • Class action types of claims and consolidated claims;
   • Claims or disputes involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, torts, bad faith, and demands for punitive damages or attorneys fees.
(2) This arbitration provision or agreement also applies to all disputes and claims between The Parties, The Parties agents, employees, affiliated entities and the employees or agents of these affiliated entities.
(3) Arbitration shall be started by either party giving written notice to the other of his, her, or its demand for arbitration, which shall briefly state the nature of the dispute, the amount involved, and the relief sought. The other party shall have thirty (30) days from receipt of the notice to deliver an answering statement to the party requesting arbitration. No filing fee or other charge is necessary to start the arbitration.
(4) The dispute shall be heard by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties. If a party fails to deliver a timely answering statement, then the party requesting arbitration shall select a neutral, disinterested arbitrator who shall decide the matter. If an answering statement is filed and the parties cannot agree upon the arbitrator, then the provisions of the Federal Arbitration Act (9 U.S.C. §5), shall apply. Lender shall pay the arbitrator's fees and expenses for the first two days of hearings. In his decision or award, the arbitrator shall direct the parties to pay his or her fees and other costs according to the relative fault of the parties.
(5) The arbitration shall be held in Caddo Parish, Louisiana, unless the responding party in his, her or its answering statement requests the arbitration be held in his, her or its parish of residence or principal place of business.
(6) Except as they conflict with this arbitration provision, all arbitrations under this provision shall follow the procedures set forth in the provisions of the Federal Arbitration Act, which are incorporated by reference.
(7) This arbitration provision or agreement applies even if Borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy. This agreement is also binding upon the successors, assigns and representatives of the parties.
(8) Neither party is required to initiate arbitration proceedings for matters of $10,000 or less (inclusive of attorneys fees and costs). Seller is not required to initiate arbitration before initiating a suit for money owed by Buyer, repossessing or foreclosing upon collateral including executory or ordinary process, and lender reserves the right to obtain a money judgment against Buyer and pursue the seizure, sale and other related remedies in the courts. However, and notwithstanding the foregoing, disputes arising out of or relating to foreclosure or repossession of collateral shall be arbitrated.
(9) If either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision. If either party files a lawsuit for any of the matters not covered by this provision (as stated in item 8 above) and the other party files a counterclaim, then within thirty (30) days of the counterclaim, either party may demand arbitration. In such event all disputes, causes of action, and claims in both the complaint and the counterclaim shall be heard and decided by the arbitrator according to this agreement.
(10) The Parties hereby waive their right to a jury trial in all legal proceedings between them including any lawsuits, arbitrations or other hearings.
(11) The Parties agree that no class action arbitration shall be allowed by this Agreement and that arbitration proceedings between them shall not be combined or consolidated with any disputes or proceedings with other borrowers.
(12) Once the arbitrator has rendered a decision, either party may file a lawsuit or other legal proceeding to enforce the decision or to obtain a judgment granting the relief awarded by the arbitrator.

This agreement does not affect or extend any applicable statutes of limitation

_Janika Rogers_                                           _Regan Gullatt_
        Witness                                                Buyer

By: _Juan Smith Fuentes_                                   _____
          Seller                                               Buyer

This document is subject to a security interest in favor of BANK OF AMERICA, N.A., AS AGENT.

Buyer has read and understands all of the additional terms continued on all of the pages hereof and agrees that they are part hereof as if set forth at this point.

This agreement consist of 3 pages.

LA RISC 01/16                                                                        PAGE 2 OF 3 PAGES

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns, and transfers to __TOWER LOAN__ (The Assignee herein), its successors or assigns, the above contract, all monies due or to become due, and in and to the property described herein and all rights and remedies under said contract, including the right to collect all installments due thereunder and the right (either in its own name or in dealer's name) to take all such proceedings, legal or otherwise, as Seller might have taken save for this Assignment. To induce the Assignee to purchase this contract, the Seller unconditionally guarantees and warrants to it as follows: (1) That no legal or equitable defenses exist against this contract; (2) That the Seller has fully complied with all federal, state and local laws and regulations regarding this contract, including, without limitation, any regulations of the Consumer Financial Protection Bureau and or the Federal Reserve Board on consumer credit, the Gramm Leach Bliley Act and the USA Patriot Act; (3) That all disclosures and representations made on or in this contract are true and correct as shown; (4) That this contract and the signatures shown thereon are genuine; (5) That the Buyer was fully competent and of legal age of majority under the existing laws of the state of residence of Buyer to execute this contract; (6) That the Seller had a good and merchantable fee simple title to the Goods at the time of the execution of this sale and that said contract provides a primary lien on the Goods described above as security for the unpaid balance due on the purchase price thereof which is prior and superior to any claim on the date of this contract; (7) The Goods and/or services furnished to Buyer are free from defects which Buyer can either claim against Assignee or raise as a defense to any suit by Assignee pursuant to 16 C.F.R. part 433; (8) That the note and security agreement was given in a bona fide transaction for goods furnished and/or services rendered; (9) That the credit information listed herein represents actual statements made by the Buyer of merchandise involved and that the terms listed herein are true and correct statements of the terms under which said merchandise was sold to the Buyer; (10) That the balance due on said account as shown herein is the true and correct amount due from Buyer and such amount is not now disputed by Buyer; (11) That the written instruments, if any, evidencing or securing said account receivable contain the entire contract between the undersigned and the buyer and there is no special or side arrangement for rebate, extension of payment, or other concession affecting said account; (12) That no legal action has been commenced by the undersigned to collect said account receivable.

If Buyer brings any claim or legal action against Assignee, whether by arbitration, direct suit, counterclaim, or otherwise claiming any defect, deficiency in the Goods, and/or services covered by this contract, based upon fraud or Seller's failure to comply with applicable law, Seller shall indemnify and hold Assignee harmless against any such suit, damages, attorneys fees, and expenses arising therefrom, and pay any and all costs and all attorneys fees incurred by Assignee in defending said claim.

If Assignee renews, extends, or changes due date of contract, the undersigned shall continue to be responsible on all agreements in this assignment. If any of the foregoing warranties are breached, or if any of the representations be untrue, then the undersigned will upon demand repurchase the contract from Assignee and pay it in cash in an amount equal to the entire unpaid balance on said contract with accrued interest and costs. If Assignee seeks the services of an attorney to enforce the provisions of this Assignment, including any action based upon breach of the foregoing warranties, then the Seller shall pay all costs of court and all attorneys fees incurred by Assignee.

WITNESS our signatures this the __11th__ day of __January__, 20__16__

_Juan Smith Furniture_
Seller

By: _Janita Rogers_

LA RISC 01/16

PAGE 3 OF 3 PAGES

# Ivan Smith
## FURNITURE
Appliances • HDTV's • Bedding

**REGAN GULLATT**

4116 HWY 145

CHOUDRANT, LA 71227
Home: 318-768-2993  Phone: 318-243-5299

Customer Code: GULLR91425

Sales Order #01026400018
Store: IVAN SMITH
FURNITURE-MONROE MONROE 40
Store Phone #:318-410-9122
Delivery Date: 01/09/2016 (Delivery)
Purchased: 01/02/2016 05:32 PM
Salesperson: JAMES BRANTLEY

| Qty | Location | Product | Vendor Stock #/Desc. | Retail |
|---|---|---|---|---|
| 1 | | P34888 | SUDE PKG 3488DC-60R+2242B-26 (C)FIREPLACE DARK CHOCOLATE | $700.00 |
| 1 | 40 : SHW | 348860 | SUDE 3448DC-60R (D)(C)F'PLACE SANTA FE MEDIA | INCL |
| 1 | 40 : SHW | 348861 | SUDE 2242B-26 (C)FIRE BOX W/ REMOTE | INCL |
| 1 | | P26852 | TSIN PKG 26II310GRA+26MMS8529-W478 MEDIA FIREPLACE WHITE SOUNDBAR | $770.00 |
| 1 | DC : STOCK | 260310 | TSIN 26II310GRA (C)INSERT INFRARED SPECTRAFIRE | INCL |
| 1 | DC : STOCK | 268529 | TSIN 26MMS8529-W478-T478 (C)F'PLACE COUNTRY WHITE | INCL |
| 1 | | FCP123 | FCAR FURNITURE CARE PROTECTION | $149.99 |

FLOOR MODEL ON SKU# P34888

Items may be returned at time of delivery for a refund, minus a 10% restocking fee and delivery charge. Merchandise picked up by customer, must be returned by next business day. A 10% restocking fee will be assessed. All merchandise must be returned in same condition as it was received. Special orders, close-outs, "as-is", sale merchandise and mattresses are non-refundable. Visit our web site at ivansmith.com/customerservice for a full copy of our warranties, return and service policies.

**Financing Information**
Finance Co.: TOWER LOANS
Financed Amt.: $1,817.43    Auth Code:

Subtotal $1,619.99
Delivery $79.99
Sales Tax $117.45
Total $1,817.43
Balance Due $0.00
See Disclosure Statement For Details
Financed Amt: $1,817.43

Customer Signature: *ReganGullatt*

I agree to pay the above total amount
in accordance with the Provider Agreement.

Page 1

**RETAIL INSTALLMENT CONTRACT SECURITY AGREEMENT AND DISCLOSURE AGREEMENT**

Date of Contract: 4/1/2016

**BUYER**
- LAST NAME: Gulbatt
- FIRST: Regan
- INITIAL: S
- ACCOUNT NUMBER: 
- STREET ADDRESS: 4116 Hwy 145
- CITY: Choudrant
- STATE: LA
- ZIP: 71227

**SELLER**
- NAME: SIMMONS SPORTING GOODS
- SALESMAN:
- STREET ADDRESS: 815 N. WASHINGTON STREET
- CITY: BASTROP
- STATE: LA
- ZIP: 71220

**FEDERAL TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 17.99 % | $ 158.80 | $ 801.44 | $ 960.24 | $ 960.24 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 24 | 40.01 | Monthly Beginning 05/01/2016 |

**ITEMIZATION OF AMOUNT FINANCED**
1. Cash Price (including sales tax) $ 801.44
2. Cash Downpayment $ 0.00
   Total Downpayment $ 0.00
3. Amount Paid to Others on Your Behalf
   a. To Your Prior Account No. N/A $ 0.00
   b. N/A $ 0.00
   Total Paid to Others on Your Behalf $ 0.00
4. Unpaid Balance (1-2+3) $ 801.44
5. Amount Financed (4) $ 801.44

Security: You are giving a security interest in the goods or property being purchased.
Prepayment: If you pay off early, you may be entitled to a refund of part of the finance charge.
Late Charge: If a payment is more than 10 days late, you will be charged 5% of the payment amount or $10.00, whichever is greater.

See your contract documents for any additional information about nonpayment, default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties.

**DESCRIPTION OF GOODS OR SERVICES** (collectively, the "GOODS")

SEE ATTACHED INVOICE

**INSTALLMENT SALES CONTRACT AND SECURITY AGREEMENT**

PARTIES: "Buyer" means all Buyers signing this contract whether one or more; "Seller" means the Seller signing this contract and any successors and assigns thereof, including without limitation any creditor that purchases this contract.
NOTE: For value received, pursuant to the terms and conditions hereof (including those on the additional pages of this contract), Buyer purchases the Goods described above and agrees to pay to the order of Seller or Seller's designee, at the office of the holder of this contract, the Total of Payments according to the schedule of payments set out above. If there is more than one Buyer, then each agrees that they are jointly and severally liable for payment of the Goods described above.
DEFAULT: Buyer shall be in default hereunder when: (i) Buyer defaults in payment or performance of any obligation or covenant herein; or (ii) upon loss, theft, substantial damage or destruction of the Goods; or (iii) when Seller reasonably deems itself insecure.
REMEDIES: Upon default, and if required, at any time thereafter, Seller may (i) declare the entire unpaid balance immediately due and payable, at the option of the holder hereof, without notice or demand; and (ii) cause all or any part of the Goods to be seized and sold under nonjudicial foreclosure or sale, or executory or other legal process issued by any court of competent jurisdiction, with or without appraisement, at the option of the holder, to the highest bidder for cash. Buyer shall pay all costs of collection, including court costs and reasonable attorney's fees.
For purposes of foreclosure by executory process, Buyer hereby confesses judgment in favor of the holder for the full amount of the indebtedness, together with all attorney's fees and costs, and any and all monies that may become due to the holder under the terms hereof or secured hereby. Buyer further waives the benefit of appraisement provided for in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, to the extent applicable, and all other laws conferring the same; the demand and three (3) days notice of demand as provided in Articles 2639 and 2721 of the Louisiana Code of Civil Procedure, the notice of seizure provided by Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; and the three (3) days delay provided for in Articles 2331 and 2722 of the Louisiana Code of Civil Procedure.
LATE CHARGE: Buyer shall pay Seller a late charge, the greater of $10.00 or 5% of the unpaid payment with respect to any payment that continues unpaid for more than ten (10) days following its scheduled date or deferred date.

TITLE: Title to said Goods shall not pass to Buyer until the balance is fully paid. In consideration of $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, the undersigned (whether one or more) has granted, and by these presents, does hereby grant unto Seller a purchase money security interest pursuant to Section 9-203(1) of the Revised Article 9 of the Uniform Commercial Code, in the Goods and any and all additions and accessories thereto and proceeds and products thereof to secure the payment in performance of Buyer's obligations hereunder.
CREDITORS: If Tower Loan of Mississippi LLC, First Tower Loan LLC, or Gulfco of Louisiana LLC, ("Tower"), P.O. Box 320001, Flowood, MS 39232, buys this contract then all disclosures are made jointly by Seller and Tower.
NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
REFUND FOR REPAYMENT IN FULL: If Buyer pays in full (by cash, renewal or other wise) before the last payment is due, Seller shall pay Buyer a refund of unearned finance charges, excluding the origination and documentation fees, as follows: (i) if paid before the expiration of one-half (1/2) of the term of the loan, the refund shall be computed on the Rule of 78s after first deducting a prepayment charge of $25.00, or (ii) if paid after the expiration of one-half (1/2) of the term of the loan, the refund shall be computed according to the Rule of 78s.
CREDIT REPORTING: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You agree and hereby authorize us to obtain credit reports on you, both new, and at any time any portion of the debt remains owed to us. You specifically acknowledge and agree that we may disclose any default by you under this Note, along with any other relevant information, to credit reporting bureaus.

FINANCE CHARGE REFUND OPTION (Do not check one if applicable)  [ ] 90 days  [ ] 180 days  [x] 365 days  [ ] 730 days.
If one of the boxes above are checked, then the following additional terms apply: If Buyer pays the entire Amount Financed set forth above and any late fees within the number of days shown in the box checked above (the "Option Period") Seller shall refund to Buyer all finance charges paid by Buyer. During the Option Period, Buyer must timely make all scheduled payments, and failure to do so is a default under this contract. In addition to all other remedies available to Seller upon Buyer's default, if, during the Option Period, Buyer fails to make any scheduled payment within thirty (30) days after its scheduled due date, the finance charge refund option shall automatically terminate, and Seller shall have no obligation to refund any finance charges to Buyer under such option. The Option Period starts on the date the contract is signed.

THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS FOR WHICH YOU ARE RESPONSIBLE.

LA RISC 01/16                                                                  PAGE 1 OF 3 PAGES

Buyer shall keep the Goods free from any adverse lien, security interest, or encumbrance and in good order and repair. Buyer shall not use the Goods in violation of any law, and Buyer shall not sell or transfer the Goods without the written consent of Seller.

Said Goods will be located and situated at the residence of Buyer(s) as shown above, unless otherwise stated herein _____ and shall not be removed from the premises, nor in any way disposed of without the written consent of the Seller. The undersigned further covenant and agree to keep the Goods fully insured against loss by fire, theft and collision or other casualty (as applicable) loss, if any, payable to Seller as his interest may appear. Buyer shall pay promptly when due all taxes and assessments upon the Goods. Seller may inspect the Goods at any time, wherever located.

At its option, Seller may discharge taxes, liens, security interest, and other encumbrances on the Goods, may pay for the insurance coverage on the Goods and may pay for the maintenance and preservation of the Goods. Buyer shall reimburse Seller on demand for any such payments made by Seller, and Seller shall be entitled to interest on such payments at 12% per annum.

READ THIS ARBITRATION AGREEMENT CAREFULLY. This arbitration agreement limits your rights to use the Courts.

By making this loan, Lender binds itself to this arbitration agreement.

The Buyer, Seller and any successors or assignees, hereinafter referred to as "The Parties".

Arbitration is a method of resolving disputes between parties without going to court. The Parties agree that if there are any disputes between them, those disputes will be resolved by arbitration. Any party may require the dispute or claim to be submitted to an arbitrator in accordance with this provision. The arbitrator's decision will be final and binding on all parties. The parties agree that the funds loaned to Buyer were transactions in interstate commerce, that this loan involves interstate commerce, and that the Federal Arbitration Act applies to this transaction. The Parties understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

The Parties agree that they shall arbitrate all disputes between them on the following terms:

(1) Except as otherwise set forth below, this arbitration agreement applies to all claims and disputes between The Parties. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or to the arbitrability of any claim or counterclaim. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:
   • The consumer credit contract Buyer is obtaining from Seller today and any other retail installment contracts with Seller;
   • Any insurance purchased in connection with this consumer credit contract or any previous retail installment sales contract;
   • Any other product or service purchased in connection with this consumer credit contract;
   • Whether the claim or dispute must be arbitrated;
   • The validity of this arbitration agreement;
   • Any negotiations or discussions between us;
   • All claims or disputes based upon Federal or State laws or regulations;
   • Class action type of claims and consolidated claims;
   • Claims or disputes involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, torts, bad faith, and demands for punitive damages or attorneys fees.

(2) This arbitration provision or agreement also applies to all disputes and claims between The Parties, The Parties agents, employees, affiliated entities and the employees or agents of these affiliated entities.

(3) Arbitration shall be started by either party giving written notice to the other of his, her, or its demand for arbitration, which shall briefly state the nature of the dispute, the amount involved, and the relief sought. The other party shall have thirty (30) days from receipt of the notice to deliver an answering statement to the party requesting arbitration. No filing fee or other charge is necessary to start the arbitration.

(4) The dispute shall be heard by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties. If a party fails to deliver a timely answering statement, then the party requesting arbitration shall select a neutral, disinterested arbitrator who shall decide the matter. If an answering statement is filed and the parties cannot agree upon the arbitrator, then the provisions of the Federal Arbitration Act (9 U.S.C. §5), shall apply. Lender shall pay the arbitrator's fees and expenses for the first two days of hearings. In his decision or award, the arbitrator shall direct the parties to pay his or her fees and other costs according to the relative fault of the parties.

(5) The arbitration shall be held in Caddo Parish, Louisiana, unless the responding party in his, her or its answering statement requests the arbitration be held in his, her or its parish of residence or principal place of business.

(6) Except as they conflict with this arbitration provision, all arbitrations under this provision shall follow the procedures set forth in the provisions of the Federal Arbitration Act, which are incorporated by reference.

(7) This arbitration provision or agreement applies even if Borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy. This agreement is also binding upon the successors, assigns and representatives of the parties.

(8) Neither party is required to initiate arbitration proceedings for matters of $10,000 or less (inclusive of attorneys fees and costs). Seller is not required to initiate arbitration before initiating a suit for money owed by Buyer, repossessing or foreclosing upon collateral including executory or ordinary process, and lender reserves the right to obtain a money judgment against Buyer and pursue the seizure, sale and other related remedies in the courts. However, and notwithstanding the foregoing, disputes arising out of or relating to foreclosure or repossession of collateral shall be arbitrated.

(9) If either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision. If either party files a lawsuit for any of the matters not covered by this provision (as stated in item 8 above) and the other party files a counterclaim, then within thirty (30) days of the counterclaim, either party may demand arbitration, in such event all disputes, causes of action, and claims in both the complaint and the counterclaim shall be heard and decided by the arbitrator according to this agreement.

(10) The Parties hereby waive their right to a jury trial in all legal proceedings between them including any lawsuits, arbitrations or other hearings.

(11) The Parties agree that no class action arbitration shall be allowed by this Agreement and that arbitration proceedings between them shall not be combined or consolidated with any disputes or proceedings with other borrowers.

(12) Once the arbitrator has rendered a decision, either party may file a lawsuit or other legal proceeding to enforce the decision or to obtain a judgment granting the relief awarded by the arbitrator.

This agreement does not affect or extend any applicable statutes of limitation.

_Amanda Tourock_ (Witness)　　　　_Regan Gullatt_ Buyer

By: _Simmons Sporting Goods_ Seller　　　　_____ Buyer

This document is subject to a security interest in favor of BANK OF AMERICA, N.A., AS AGENT.

Buyer has read and understands all of the additional terms contained on all of the pages hereof and agrees that they are part hereof as if set forth at this point.

This agreement consist of 3 pages.

LA RISC 01/16　　　　PAGE 2 OF 3 PAGES

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns, and transfers to ___TOWER LOAN___ (The Assignee herein), its successors or assigns, the above contract, all monies due or to become due, and in and to the property described herein and all rights and remedies under said contract, including the right to collect all installments due thereunder and the right (either in its own name or in dealer's name) to take all such proceedings, legal or otherwise, as Seller might have taken save for this Assignment. To induce the Assignee to purchase this contract, the Seller unconditionally guarantees and warrants to it as follows: (1) That no legal or equitable defenses exist against this contract; (2) That the Seller has fully complied with all federal, state and local laws and regulations regarding this contract, including, without limitation, any regulations of the Consumer Financial Protection Bureau and or the Federal Reserve Board on consumer credit, the Gramm Leach Bliley Act and the USA Patriot Act; (3) That all disclosures and representations made on or in this contract are true and correct as shown; (4) That this contract and the signatures shown thereon are genuine; (5) That the Buyer was fully competent and of legal age of majority under the existing laws of the state of residence of Buyer to execute this contract; (6) That the Seller had a good and merchantable fee simple title to the Goods at the time of the execution of this sale and that said contract provides a primary lien on the Goods described above as security for the unpaid balance due on the purchase price thereof which is prior and superior to any claim on the date of this contract; (7) The Goods and/or services furnished to Buyer are free from defects which Buyer can either claim against Assignee or raise as a defense to any suit by Assignee pursuant to 16 C.F.R. part 433; (8) That the note and security agreement was given in a bona fide transaction for goods furnished and/or services rendered; (9) That the credit information listed herein represents actual statements made by the Buyer of merchandise involved and that the terms listed herein are true and correct statements of the terms under which said merchandise was sold to the Buyer; (10) That the balance due on said account as shown herein is the true and correct amount due from Buyer and such amount is not now disputed by Buyer; (11) That the written instruments, if any, evidencing or securing said account receivable contain the entire contract between the undersigned and the buyer and there is no special or side arrangement for returns, extension of payment, or other concession affecting said account; (12) That no legal action has been commenced by the undersigned to collect said account receivable.

If Buyer brings any claim or legal action against Assignee, whether by arbitration, direct suit, counterclaim, or otherwise claiming any defect, deficiency in the Goods, and/or services covered by this contract, based upon fraud or Seller's failure to comply with applicable law, Seller shall indemnify and hold Assignee harmless against any such suit, damages, attorneys fees, and expenses arising therefrom, and pay any and all costs and attorneys fees incurred by Assignee in defending said claim.

If Assignee renews, extends, or changes due date of contract, the undersigned shall continue to be responsible on all agreements in this assignment. If any of the foregoing warranties are breached, or if any of the representations be untrue, then the undersigned will upon demand repurchase this contract from Assignee and pay it in cash in an amount equal to the entire unpaid balance on said contract with accrued interest and costs. If Assignee seeks the services of an attorney to enforce the provisions of this Assignment, including any action based upon breach of the foregoing warranties, then the Seller shall pay all costs of court and all attorneys fees incurred by Assignee.

WITNESS our signatures this the ___01___ day of ___April___ 2016.

Simmons Sporting Goods
_Seller_
By: Amanda Patrick

LA R900 04/16

PAGE 3 OF 3 PAGES

**Simmons**
**Sporting Goods**
918 North Washington Street
Bastrop, LA 71220

318-283-2688
800-726-9930

| Clerk: AMANDA P. | Date: 4/1/2016 10:42:45 AM | Tran # 1487 | Store # 001 | Register # 84 | | Page 1 |
|---|---|---|---|---|---|---|
| Itemcode | Description | Price ea. | Quantity | | Ext Disc | Net Sale |
| 02361441538 | BROWNING 12201425 SLING WATERFOWL NEOPRENE MOSGB | 34.99 | 1 | | 0.00 | 34.99 |
| 04369914612 | MICHAELS 14612 SLING SWIVELS QD 11 S RUG | 19.99 | 1 | | 0.00 | 19.99 |
| 03031755870 | LEUPOLD 55870 RIFLE RING HI MT DET | 19.99 | 1 | | 0.00 | 19.99 |
| 03031713674 | LEUPOLD 113674 VX-I SCOPE 3-9X40 DUPLEX MATTE | 229.99 | 1 | | 30.00 | 199.99 |
| 02946505735 | FEDERAL AM22 CHAMPION 22LR BULK PACK 325 RD | 21.99 | 2 | | 4.00 | 39.98 |
| 88579209484 | OUTDOOR CAP SIM121846 CAP SIMMONS YOUTH NAVY ORANGE | 9.99 | 1 | | 0.00 | 9.99 |
| 64748405809 | FROGG TOGGS RAIN SUIT AP102 KHAKI | 39.99 | 1 | | 0.00 | 39.99 |
| 02650937540 | ALLEN 37540 RIFLE CASE SCOPED FLAGSTAFF 10/22 | 39.99 | 1 | | 0.00 | 39.99 |
| | | | | | Subtotal | 404.91 |
| | | | | | Tax 1 | 20.25 |
| | | | | | Tax 2 | 24.29 |
| | | | | | Total | 449.45 |
| Layaway # 0844801487 | REAGAN GULLIOT | 3182435299 | | | Lway | 449.45 |

REAGAN GULLIOT    Signature _____        Change    0.00

THANK YOU
FOR YOUR BUSINESS

REAGAN GULLIOT

**Simmons
Sporting Goods
918 North Washington Street
Bastrop, LA 71220**

318-283-2888
800-726-9930

| Clerk: LINDSEY R. | Date: 3/24/2016 10:01:35 AM | Tran # 33769 | Store # 001 | Register # 33 | | Page 1 |
|---|---|---|---|---|---|---|
| Itemcode | Description | Price ea. | Quantity | | Ext Disc | Net Sale |
| 73667601286 | RUGER 01286 K1022RPCANG RIFLE 22LR STAINLESS NATGEAR Log # 8368  Serial # 0010-29957 | 319.99 | 1 | | 0.00 | 319.99 |
| | ROGAN GULLATT  4116 HWY 145 | CHOUDRANT, LA 71227 | 318-243-5299 | | | |
| | | | | | Subtotal | 319.99 |
| | | | | | Tax 1 | 12.80 |
| | | | | | Tax 2 | 19.20 |
| | | | | | Total | 351.99 |
| Layaway # 0334723769 71227  318-243-5299 | REGAN GULLAT-CONTRACT | 4116 HWY 145 | CHOUDRANT, LA | | Lway | 351.99 |

Signature _____     Change    0.00

**THANK YOU
FOR YOUR BUSINESS**

REGAN GULLAT-CONTRACT
4116 HWY 145
CHOUDRANT, LA 71227

# I.A INSTALLMENT LOAN AGREEMENT AND DISCLOSURE STATEMENT

| LOAN NUMBER | BORROWER NAME | ADDRESS |
|---|---|---|
| 55 | REGAN GULLATT | 4116 HWY 145 HWY 145, CHOUDRANT LA 71227- |

| | CO-BORROWER NAME | ADDRESS |
|---|---|---|
| DATE OF LOAN 12-07-16 | | |
| | CO-BORROWER NAME | ADDRESS |

**LENDER:** FIRST TOWER LOAN, LLC DBA TOWER LOAN OF RUSTON
P O BOX 1465, RUSTON, LA, 71273

## FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total Of Payments | Schedule Of Consecutive Monthly Payments | |
|---|---|---|---|---|---|
| | | | | Number Of Payments | Amount Of Each Payment |
| 33.28 % | $1674.93 | $ 4019.07 | $ 5694.00 | 26 | 219.00 |
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | 1st Payment Due 01/06/17 | Last Payment Due 02/06/19 |

### ITEMIZATION OF AMOUNT FINANCED UNDER FEDERAL LAW OF $ 4019.07

- Amount given to you directly ............... $ 1459.89
- Amount paid on your account ............... $ 1545.59
- Amounts paid to others on your behalf:
  - Public Officials ............... $ 30.00
  - Insurance company:
    - Credit Life ............... $ 197.39
    - Credit Disability ............... $ .00
    - Credit Property ............... $ 370.11
    - ad&d ............... $ 296.09
    - Car Club ............... $ 120.00
- Origination Fee ............... $ 50.00
- Documentation Fee ............... $ 20.00
- Subtotal of above amounts ............... $ 4089.07
- LESS Prepaid Finance Charge ............... $ 70.00
- Amount Financed (TOTAL) ............... $ 4019.07

**SECURITY:** You are giving a security interest and/or mortgage in: Personal Property

Collateral securing this and other loans you have with us also secures other and future indebtedness.
**LATE CHARGE:** If a payment is more than 10 days late, you will be charged the greater of $10.00 or 5% of the payment.
**FILING FEES:** $ 30.00
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty and you may be entitled to a refund of part of the finance charge.

See your Promissory Note and Security Agreement and/or Mortgage for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

## INSURANCE:
Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the annual cost.

| TYPE | | | PREMIUM | | SIGNATURE | |
|---|---|---|---|---|---|---|
| Single Credit Life | | X | $197.39 | | Signature: Regan Gullatt | Signature: |
| Joint Credit Life | | | | | Signature: | Signature: |
| Credit Disability | | | | | Signature: | |

You may obtain property insurance from anyone you want, provided the insurance company is acceptable to the creditor. If you get personal property insurance from or through the creditor, you will pay $ 370.11    [X] Dual Interest    [ ] Single Interest

$_____ Single Interest Automobile Insurance

**THE FOLLOWING DISCLOSURES ARE REQUIRED BY STATE LAW:** Excluding the origination fee of $50.00 and the documentation fee of $20.00 from the finance charge, the finance charge is $ 1604.93 and the contract rate is 31.51 %.

## PROMISSORY NOTE AND SECURITY AGREEMENT (hereafter, "Agreement")

**PARTIES:** "Borrower" means all Borrowers and Co-Borrowers signing below whether one or more; and "Lender" means the Lender named above.
**PROMISSORY NOTE:** For value received, Borrower promises, in solido, to pay to the order of the Lender the "Total of Payments" set forth in the Disclosure Statement hereinabove in the monthly payments stated in the "Schedule of Consecutive Monthly Payments" set forth in the Disclosure Statement hereinabove, until paid in full. After maturity, Borrower will pay Lender interest on any outstanding indebtedness (as defined below) at the Contract Rate set forth in the Disclosure Statement hereinabove for one (1) year. After that date, Borrower shall pay Lender interest on any outstanding indebtedness at the lesser of 18% per year or the maximum rate allowable under applicable state and federal laws. The principal (AMOUNT FINANCED), the Finance Charge, the Total Payments, and all interest, other charges, costs, expenses, and fees (including attorney's fees) accruing under this Agreement are referred to as the Indebtedness. Borrower and any endorsers, guarantors, and sureties of the Indebtedness, hereby waive(s), severally, presentment of this note (this Agreement) for payment, demand, notice of non-payment and protest, and all pleas of division or discussion, and consent(s) that time of payment may be extended without notice thereof.
**INDEBTEDNESS:** The word "Indebtedness" means the indebtedness evidenced by this Agreement and any and all other indebtedness, whether existing now or incurred in the future, of Borrower to Lender.
**PREPAYMENT REFUND:** If Borrower pays the entire loan balance, with interest and accrued charges and fees, if any, in full by cash, renewal, or otherwise) before the last payment is due, Lender shall pay Borrower a refund of unearned finance charges, excluding the origination and documentation fees, as follows: (i) if paid before the expiration of one-half (1/2) of the term of the loan, the refund shall be computed according to the Rule of 78s, after first deducting a prepayment charge of $25.00, or (ii) if paid after the expiration of one-half (1/2) of the term of the loan, the refund shall be computed according to the Rule of 78s.
**DEFAULT:** Borrower commits an event of default when: (i) Borrower does not pay any payment of any Indebtedness in full when due; (ii) Borrower does not fully perform any of Borrowers obligations under this Agreement; (iii) Borrower moves the security from Borrower's address without first giving Lender written notice and receiving Lender's written consent; (iv) any of the security is abandoned, lost, stolen, not maintained, destroyed, or substantially damaged; (v) Lender reasonably deems itself insecure; (vi) Borrower death or incompetency of (vii) Borrower, or any guarantor, defaults under any note, mortgage, pledge, security agreement or guaranty evidencing or securing the Indebtedness or any other obligations Borrower owes to Lender (collectively, "Other Loan Documents").
**REMEDIES:** Upon an event of default, Lender may, at its sole discretion, take one or more of the following actions: (i) in accordance with the arbitration agreement bring suit for the delinquent payments, by ordinary or executory process; (ii) commence an arbitration proceeding as provided for on the reverse side hereof; (iii) accelerate and declare due the remaining balance of the Indebtedness due and payable, without notice or further demand for payment (but in such event, upon receiving full payment, Lender shall rebate the unearned finance charge on the date of acceleration by using the method described in Prepayment Refund above); (iv) institute foreclosure proceedings and cause the security, or any part thereof, wherever found, to be immediately seized and sold, by ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, at public or private sale, and without the necessity of making additional demand upon or notifying Borrower or placing Borrower in default, all of which are expressly waived; (v) have a keeper appointed pursuant to La. R.S.9:5136, et seq., and Borrower agrees to pay the reasonable fees of such keeper, which fees are hereby deemed part of the Indebtedness; (vi) exercise any other remedies of a secured party under Chapter 9 of the Louisiana Commercial laws (LSA-R.S. 10:9-101 et seq.) and (vii) declare any mortgage, lien, security interest securing the indebtedness or any other debt owed by Borrower to Lender to be in default and Borrower agrees that in an event of default hereunder shall also constitute an event of default under all Other Loan Documents, and (viii) Repossession of collateral without judicial notice and recovery of any deficiency. If Lender refers this note (this agreement) to attorney for collection, Borrower shall pay all costs of collection, including court costs, and all reasonable attorney's fees not to exceed 25% of the unpaid debt after default. Lender is also entitled to collect, subject to limits under applicable law, Lender's expenses and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to lift, modify, or vacate any automatic stay or injunction), and appeals. Louisiana Law permits repossession of motor vehicles without judicial process and Lender reserves the right to repossess any motor vehicles pledged to Lender, upon an event of default.
**LATE CHARGE:** Borrower shall pay Lender a late charge, equal to the greater of $10.00 or 5% of the unpaid payment, on any payment that continues unpaid for more than ten (10) days following its scheduled date or deferral date, and such late charge shall become part of the Indebtedness secured by this Agreement. The assessment of a late charge shall not constitute a waiver by Lender of an event of default by Borrower.
**BORROWER'S DUTIES:** Upon request, Borrower shall maintain fire, theft, and extended coverage insurance on the security. Such insurance policies shall be payable to Borrower and Lender and shall provide Lender with at least ten (10) days written notice before cancellation. Borrower shall keep the security at Borrower's address shown above, in good repair, and free from any adverse liens and security interests. Borrower authorizes lender to file financing statements.
**CREDIT REPORTING:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You agree and hereby authorize us to obtain credit reports on you, both now, and at any time any portion of the debt remains owed to us. You specifically acknowledge and agree that we may disclose any default by you under this Note, along with any other relevant information, to credit reporting bureaus.
**GOVERNING LAW:** This Agreement is governed by the laws of the State of Louisiana and applicable federal law, and specifically the Louisiana Consumer Credit Law, without regard to the principles or conflicts of laws.
**AMENDMENT:** This Agreement may be amended only by written act; and no forbearance or acceptance of a late payment by Lender shall constitute an amendment or release of a Borrower, guarantor or surety of his or her obligations.
**CONFESSION OF JUDGMENT; ADDITIONAL WAIVERS:** For purposes of foreclosure under Louisiana executory process procedures, Borrower confesses judgment and acknowledges to be indebted unto and in favor of Lender up to the full amount of the Indebtedness, in principal, interest, costs, expenses, attorneys' fees and other fees and charges. To the extent permitted by applicable law, Borrower waives: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure (the "CCP") and all other laws with regard to appraisal sale; (b) the demand and three (3) days delay as provided under Article 2721 of the CCP; (c) the notice of seizure as provided under Articles 2293 and 2721 of the CCP, (d) the three (3) days delay provided under Articles 2331 and 2722 of the CCP; (e) all other benefits provided under Articles 2331, 2722 and 2723 of the CCP and all other Articles not specifically mentioned above; and (f) any and all homestead exemptions and similar rights and all other exemptions from seizure and/or sale accorded Borrower under the Constitution or the laws of Louisiana. Five (5) days notice of regular mail to Borrower at the above address shall be deemed to be reasonable notice to Borrower of any disposition of any security. Borrower shall pay all costs of collection, retaking, holding, selling, arbitration, and foreclosure, including a reasonable attorney's fee of 25% of the amount delinquent, all of which is hereby deemed additional indebtedness. Borrower agrees that the release of any co-obligor, guarantor or surety from any obligation under this Agreement, or any collateral securing the Indebtedness, shall not constitute a release of any other party or collateral.
**MOTOR VEHICLE SALES FINANCE ACT:** If this transaction is governed by the Louisiana Motor Vehicle Sales Finance Act, then this Agreement will be performed in accordance with and governed by the Louisiana Motor Vehicle Sales Finance Act for all purposes.
**SECURITY:** To secure the indebtedness, Borrower grants Lender a security interest in the following movable (personal) property and any and all additions and accessories thereto and proceeds and products therefrom.
This value excludes the value of any motor vehicles, livestock, boats or mobile homes
CRAFTSMAN LAWN TRACTOR, STIHL WEEDEATER, POULAND CHAINSAW, 1ST TOOLBOX, 2ND TOOLBOX, 1ST WRENCH SET, 2ND WRENCH SET, 1ST SOCKET SET, 2ND SOCKET SET, 2ND 65" SAMSUNG P5 TV, HONDA GAS GENERATOR, TILLER, PUSHMOWER, CRAFTSMAN RIDING MOWER, DVD PLAYER, SAMSUNG TABLET.

**ARBITRATION AGREEMENT:** BY SIGNING BELOW AND OBTAINING THIS LOAN, BORROWER AGREES TO THE ARBITRATION AGREEMENT ON THE ADDITIONAL PAGES OF THIS AGREEMENT. YOU SHOULD READ IT CAREFULLY BEFORE YOU SIGN BELOW. IMPORTANT PROVISIONS, INCLUDING OUR PRIVACY POLICY CONTAINED ON ADDITIONAL PAGES, ARE INCORPORATED BY REFERENCE HEREIN

_Regan Gullatt_
BORROWER      BORROWER      BORROWER

THIS DOCUMENT IS SUBJECT TO A SECURITY INTEREST IN FAVOR OF BANK OF AMERICA, N.A., AS AGENT.

REV 08/2015

L 075355

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)

TOWER LOAN OF RUSTON
P O BOX 1465
RUSTON, LA 71273-0000

NO. 31-89027

UCC- #1

Filed for Records at 3:02 PM

12/29/2016

and Recorded in UCC Records
Lincoln Parish, Louisiana

Dy. Clerk D.C. and Recorder

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME:

1b. INDIVIDUAL'S SURNAME: GULLATT
FIRST PERSONAL NAME: REGAN

1c. MAILING ADDRESS: 4116 HWY 145 HWY 145
CITY: CHOUDRANT
STATE: LA
POSTAL CODE: 71227-

2. DEBTOR'S NAME: (blank)

3. SECURED PARTY'S NAME:

3a. ORGANIZATION'S NAME: TOWER LOAN OF RUSTON

3c. MAILING ADDRESS: P O BOX 1465
CITY: RUSTON
STATE: LA
ZIP: 71273-0000

4. COLLATERAL: This financing statement covers the following collateral:

CREAFTSMAN LAWN TRACTOR, STIHL WEEDEATER, POULAND CHAINSAW, 1ST TOOLBOX, 2ND TOOLBOX, 1ST WRENCH SET, 2ND WRENCH SET, 1ST SOCKET SET, 2ND SOCKET SET, 2ND 48" SAMSUNG FS TV, HONDA GAS GENERATOR, TILLER, PUSHMOWER, CRAFTSMAN RIDING MOWER, DVD PLAYER, SAMSUNG TABLET,

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1)(Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

PERSONAL PROPERTY OFFERED AS
COLLATERAL FOR LOAN FROM TOWER LOAN

| Item | Value |
|---|---|
| CREAFTSMAN LAWN TRACTOR | 1,500.00 |
| STIHL WEEDEATER | 100.00 |
| POULAND CHAINSAW | 100.00 |
| 1ST TOOLBOX | 200.00 |
| 2ND TOOLBOX | 200.00 |
| 1ST WRENCH SET | 100.00 |
| 2ND WRENCH SET | 100.00 |
| 1ST SOCKET SET | 100.00 |
| 2ND SOCKET SET | 100.00 |
| 2ND 48" SAMSUNG FS TV | 1,000.00 |
| HONDA GAS GENERATOR | 400.00 |
| TILLER | 400.00 |
| PUSHMOWER | 100.00 |
| CRAFTSMAN RIDING MOWER | 1,000.00 |
| DVD PLAYER | 100.00 |
| SAMSUNG TABLET | 200.00 |
| Total: | 5,700.00 |

I hereby certify that I am the owner of the above items offered as collateral, that these items are not already insured and that the values shown are true and correct.

_Regar Gullatt_
Customer

DATE: 12/7/2016